CRAVENS, Adm'x, v. HOLLIDAY et al.

No. 31915.   Jan. 14, 1947.

Rehearing Denied Feb. 25, 1947.

*177 P. 2d 495.*

Guy L. Andrews and Preslie Brown, both of McAlester, for plaintiff in error.

Gotcher & Gotcher, of McAlester, for defendants in error.

PER CURIAM. Annie Cravens, individually and as administratrix of the estate of James Cravens, deceased, commenced this action in replevin in the district court of Pittsburg county to recover possession of personal property of the alleged value of $468. The defendants are Mattie Cravens, Louisa Holliday, and Arthur Holliday. At the conclusion of the evidence the trial court sustained a motion for directed verdict for the defendants, and plaintiff has appealed, appearing herein as plaintiff in error.

Mattie Cravens was the first wife of James Cravens. They were divorced in September, 1940. In April, 1942, James Cravens married his second wife, Annie Cravens. James Cravens died in November, 1942, and Annie Cravens was appointed administratrix of his estate. The defendant Louisa Holliday is the daughter of Mattie and James Cravens. The defendant Arthur Holliday is the husband of Louisa Holliday.

During the marriage of Mattie Cravens and James Cravens they accumulated a 20-acre farm and the livestock and implements involved herein.

In December, 1940, soon after his

divorce from Mattie, James Cravens mortgaged the personal property involved herein to one Charley Clifton. Soon thereafter James Cravens sent for Louisa and Arthur Holliday and the evidence discloses that they went to live with him and that they took possession of the farm, livestock and implements and that he gave and "turned over" all his personal property to them. Thereafter Louisa and Arthur Holliday paid off the note and mortgage hereinbefore referred to.

After James Cravens had helped Louisa and Arthur with the 1941 crop he moved to town leaving the property herein involved in their possession and control.

The plaintiff in error in five allegations of error asserts that the personal property on the premises belongs to her as the surviving wife of James Cravens and as the administratrix of his estate, whereas it is the finding of the trial court that all property, not the property of Mattie Cravens, was given to his daughter, Louisa Holliday, by James Cravens prior to his death.

It is first argued that the trial court erred in excluding testimony offered by plaintiff to the effect that James Cravens before his death and after his marriage to plaintiff took her out to the 20 acres owned by him and Mattie Cravens and pointed out the property he owned. Such testimony was offered and upon objection by the defendants was excluded with the comment by the court that any such statement would be self-serving. Plaintiff cites and relies upon Ragan v. Citizens' State Bank, 38 Okla. 65, 131 P. 1093, and related cases which hold that acts and declarations of the possessor of personal property concerning the same are admissible in evidence to determine the nature of such possession although not made in the presence of one claiming ownership in the property. Conceding, without deciding, that James Cravens had such possession as to come within the above announced rule, we hold that the error,

if any, is not sufficient to warrant a reversal of the case. The circumstances under which said evidence was excluded follow. Plaintiff was asked if she visited the 20 acres owned by James Cravens with the said James. She said she had visited the premises on two occasions. The record then continues:

"Q. Had you looked over the livestock and things of that sort there? A. The last time we were out there we spent the day and he showed me the cows and horses and hogs and chickens and geese and was telling me about what he had on the place and showing me part of it. Mr. Gotcher: To which we object as self-serving. Mr. Andrews: It is not self-serving; it is nothing that she said, Your Honor please. Mr. Gotcher: Well, that is the point, it is something he said and this is one of the peculiar cases where we cannot meet that. The Court: I have an idea any statement between her and the husband would be self-serving. Mr. Andrews: Here is the suggestion I am making; they were on his property and he was there exercising actual dominion over it and it seems to me that might be competent to show ownership. The Court: That might take the inference to the jury that he said he owned the property but they could not go on that inference because it is self-serving. Sustained. Mr. Andrews: Exception."

At the time referred to in the testimony above quoted James Cravens had, following his divorce from Mattie, moved into town and was living with plaintiff in town, and his daughter Louisa and her husband Arthur Holliday were in possession of the premises and the personal property involved in this litigation. Plaintiff did not make any offer to establish what property James Cravens pointed out as his own or whether the visit to the 20 acres took place before or after the time defendants claim a gift of the property.

It is finally argued that the trial court erred in not directing a verdict for plaintiff and erred in directing a verdict for defendants. This raises the question as to whether or not there is any competent evidence to take the case

to the jury on the controverted question of fact as to gift and whether or not there is any evidence that the plaintiff was entitled to possession of the property as administratrix of the estate of James Cravens, deceased.

Mattie Cravens positively identified certain of the property as hers. This testimony is not disputed. Plaintiff claims that it is disputed by the decree of divorce between Mattie and James and that it is therefore res adjudicata. The decree of divorce did not purport to determine what property Mattie had on the place either before or after the decree, and the assertion that it did so as to the parties here involved is without substantial merit.

On the proposition of gift, at least three witnesses testified that James Cravens told them he had left his property in the possession of Louisa; that she was his only daughter and he was giving it to her. Another witness testified that after James had delivered a horse to him, the witness was approached by Arthur Holliday, who claimed the horse, whereupon witness gave the horse back to Holliday. There are also the circumstances surrounding the payment of the mortgage made by James to a local bank on practically all of the property involved in this litigation. It was paid off by Louisa and Arthur Holliday as heretofore stated. It stands to reason that they would not pay off and settle a mortgage unless they had an interest in the property covered by it.

Plaintiff relies upon Fouts v. Nance, 55 Okla. 266, 155 P. 610, which is authority for the rule that bare declarations of the donor are insufficient to establish a gift; that there must be proof of a delivery. A gift is a voluntary transfer of property by one to another without any consideration or compensation therefor. 28 C.J. 620; Gray v. Barton, 55 N.Y. 68, 14 Am. St. Rep. 181; Curriden v. Chandler, 79 N.H. 269, 108 Atl. 296.

Actual and personal delivery by the donor is not necessary when the donee is already in possession and the intention to surrender all right to the property is fully and clearly manifested. 12 R.C.L. 936; Miller v. Neff, 33 W. Va. 197, 10 S.E. 378, 6 L.R.A. 515; Graham v. Plotner, 87 Ind. App. 462, 151 N.E. 735; Jacobs v. Jolley, 99 Ind. App. 25, 62 N.E. 1028; Gosney v. Costigan, 326 Mo. 1215, 33 S.W. 2d 947; Anderson v. Lord, 87 N.H. 474, 183 A. 269, 103 A.L.R. 1108.

Plaintiff cites and relies upon Frazier v. Oklahoma Gas & Electric Co., 178 Okla. 512, 63 P. 2d 11, and Jonte v. English, 171 Okla. 291, 40 P. 2d 646; Harmon v. Kearns, 169 Okla. 290, 36 P. 2d 898, which held that to constitute a valid gift inter vivos there must be a donor competent to make it; freedom of will on his part; an intention on his part to make it; a donee capable of taking the gift; the gift must be complete, and nothing left undone; the property must be delivered by the donor, and accepted by the donee; the gift must go into immediate and absolute effect; the gift must be gratuitous; and the gift must be irrevocable.

These cases do not involve a fact situation wherein delivery has been made by the donor and the property involved is in the possession of the donee at the time the gift is made. A research has failed to disclose a case in this jurisdiction involving a similar fact situation. In Jacobs v. Jolley, supra, the court, in discussing the delivery of a bank book prior to the gift by the donor, stated:

"To make a gift of the deposit evidenced by a savings bank book an actual delivery of the book by the donor to the donee at the time of making the gift is not necessary when the donee is already in possession of it, but the gift, if complete and unambiguous, may be effected by a single oral declaration."

We are of the opinion, and hold, from an examination of the entire record that there was no evidence which would justify the trial court in sub-

mitting the issue to the jury under the claimed right of plaintiff as administratrix of the estate of James Cravens, deceased.

The judgment of the trial court is affirmed.

HURST, C. J., DAVISON, V. C. J., and OSBORN, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur.