## Robert H. LeMaitre *vs.* Massachusetts Turnpike Authority.

Hampshire. September 3, 2008. - December 10, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.[1]

*Employment,* Personnel manual. *Contract,* Employment. *Public Employment,* Retirement benefits, Sick leave benefits.

In an action brought by an employee against a former employer, alleging breach of contract arising from the employer's reduction of benefits in its incentive program, which provided cash and other benefits to employees for each unused day of annual sick leave allotted to them, payable at their retirement, the trial court judge did not err in granting summary judgment in favor of the employee, where the benefits sought by the employee were essentially a form of compensation contingent on continued employment and services rendered while the provisions of the program were in effect, which the employer bound itself to paying. [754-756]

Civil action commenced in the Superior Court Department on April 30, 2004.

The case was heard by *Judd J. Carhart,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael B. Keating (David A. Kluft* with him) for the defendant.

*Nicole B. Caprioli* for the plaintiff.

Cordy, J. At issue in this case is the enforceability of an incentive program offered and implemented by the Massachusetts Turnpike Authority (authority), which "encourage[d] employees to use their sick leave credit only when absolutely necessary, and reward[ed] employees who ha[d] unusually good attendance records." The program was described in the authority's employee handbooks and was more specifically detailed and updated in

---

[1] Justice Greaney participated in the deliberation on this case prior to his retirement.

its personnel policy and procedure bulletins (authority policies). The program was revised on several occasions between 1975 and 1996, but essentially provided cash and other benefits to employees for each unused day of annual sick leave allotted to them, payable at their retirement. In 1996, the benefits provided under the program were substantially reduced. LeMaitre retired in 2002, and received the reduced benefit for all of the sick days he had accumulated during the term of his employment, including those days that he had accumulated under the program before its benefits were reduced in 1996. A judge in the Superior Court, relying primarily on the reasoning of *O'Brien* v. *New England Tel. & Tel. Co.*, 422 Mass. 686 (1996) (*O'Brien*), and *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8 (1988) (*Jackson*), granted summary judgment to LeMaitre on a breach of contract claim, and awarded him the value of the program benefits applicable to each of the time periods during which he accrued the unused sick days. The Appeals Court affirmed, in an opinion with which we largely agree. *LeMaitre* v. *Massachusetts Turnpike Auth.*, 70 Mass. App. Ct. 634 (2007).

1. *Facts.* The undisputed facts are set out in detail in the opinion of the Appeals Court, *id.* at 635-637, and are not repeated here.

2. *Discussion.* Employee handbook cases characteristically arise when at-will employees seek to enforce the provisions of an employer issued handbook indicating that an employee will be accorded either some measure of job security or some particular disciplinary process before discharge. *Panto* v. *Moore Business Forms, Inc.*, 130 N.H. 730, 737 (1988). See, e.g., *O'Brien, supra* at 687, 695 (dismissal of at-will employee alleged to violate terms of personnel manual providing for progressive discipline); *Jackson, supra* at 8-9 (dismissal of at-will employee alleged to violate company grievance procedure). This is not such a case, and policies that might counsel against too readily concluding that an employer's unilateral announcement of a personnel policy modifies the at-will relationship it has with its employees are largely inapplicable here. See *Panto* v. *Moore Business Forms, Inc., supra* at 739 (company's unilaterally announced deferred compensation plan enforceable regardless of at-will status of employees it covered).

We agree with the Appeals Court that the program's benefits are essentially "a form of employee compensation contingent on continued employment and services rendered while the provisions [of the program] were in effect." *LeMaitre* v. *Massachusetts Turnpike Auth., supra* at 642. We also agree that through the application of the principles stated in *Jackson* and further explained in *O'Brien*, the authority bound itself to paying the benefits it promised for the performance it sought and secured.[2]

In reaching this conclusion, we need not (and do not) decide whether any other of the authority policies (or its personnel policies in their entirety) became terms of employment for LeMaitre or his similarly situated at-will colleagues. Nor do we find it necessary to decide whether an employer must utilize a specific set of words in its employee handbooks or personnel policies in order to avoid their legal enforceability.[3] We remain of the view that while the words used in such handbooks and

---

[2] This conclusion is also compelled in the circumstances of this case by the application of the principles of estoppel. In *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court*, 448 Mass. 15, 27-28 (2006), quoting *Bongaards* v. *Millen*, 440 Mass. 10, 15 (2003), we held that "[c]ircumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." See Restatement (Second) of Contracts § 90(1) (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires").

"Some typical situations where the doctrine has been applied involve . . . an employee's reliance on his employer's promise to pay a pension or other fringe benefit . . . ." H.J. Alperin, Summary of Basic Law § 5.19, at 692-693 & n.12 (4th ed. 2006), citing *Rooney* v. *Paul D. Osborne Desk Co.*, 38 Mass. App. Ct. 82, 83-84 (1995) (employee entitled to 554 shares of stock because he detrimentally relied on employer's promise to provide stock as compensation when employee changed positions within company), *Van Hook* v. *Southern Cal. Waiters Alliance, Local 17*, 158 Cal. App. 2d 556, 570-572 (1958) (union officer entitled to retirement benefits on promissory estoppel theory), and *Feinberg* v. *Pfeiffer Co.*, 322 S.W.2d 163, 169 (Mo. Ct. App. 1959) (employer bound by promissory estoppel where employee retired in reliance on employer's promise to pay $200 monthly pension check).

[3] In its opinion, the Appeals Court stated that if the Massachusetts Turnpike Authority had "intended to make no legally binding promises, it should have included in the personnel manuals 'in a very prominent position . . . an appropriate statement that there is no promise of any kind by the employer

policies are important, "the context of the . . . preparation and distribution [of the employment policies] is . . . the most persuasive proof" as to whether the employee's reliance thereon as a binding and legally enforceable commitment is reasonable. *O'Brien, supra* at 694, quoting *Woolley* v. *Hoffmann-La Roche, Inc.*, 99 N.J. 284, 299, modified on other grounds, 101 N.J. 10 (1985). Neither the wording of disclaimers nor their absence is dispositive.

3. *Conclusion.* LeMaitre's motion for summary judgment on his breach of contract claim was properly allowed, and the authority's motion for summary judgment properly denied. However, substantially for the reasons set forth in the decision of the Appeals Court, judgment is vacated and the matter remanded solely for a determination of damages owed to LeMaitre. LeMaitre's request for costs is allowed. See Mass. R. A. P. 26 (a), as amended, 378 Mass. 925 (1979).

*So ordered.*

---

contained in the manual; that regardless of what the manual says or provides, the employer promises nothing.' " *LeMaitre* v. *Massachusetts Turnpike Auth.*, 70 Mass. App. Ct. 634, 641 (2007), quoting *Ferguson* v. *Host Int'l, Inc.*, 53 Mass. App. Ct. 96, 103 (2001).