## GIBBS v. BARKSDALE.

No. 32892.  Sept. 16, 1947.

*184 P. 2d 755.*

Glen D. Neal, of Toledo, Ill., and Q. D. Gibbs, of Okmulgee, for plaintiff in error.

Steele & Boatman, of Okmulgee, for defendant in error.

DAVISON, V.C.J.   This action involves the approval by the county court and the district court on appeal, of the final account of an administratrix, over the objection by the sole heir of decedent, to one item of disbursement.

Laura Alice Long died August 23, 1942, less than a month after the death of her husband.   Her sister, Margaret Barksdale, the defendant in error herein, was appointed administratrix of her estate, and in April, 1943, filed her final account.   Decedent's mother and only heir, Mary Elizabeth Ray, whose administrator is the plaintiff in error herein, filed written objections to several items of disbursement shown therein, only one of which is presented by this appeal, to wit:

"Item of refund of money to John H. W. Barksdale in the amount of $775.-00 for the reason that the said amount of money was given to John H. W. Barksdale by decedent to be deposited to her credit in the Citizens National Bank of Okmulgee, Oklahoma, that the said John H. W. Barksdale had no claim or title to said amount of money directed by decedent to so deposit same."

The above-named John H. W. Barksdale was the son of appellee.

The objections were overruled and the final account approved by the county court and appeal was had to the district court where the matter was tried de novo.

The testimony shows that John Barksdale, the nephew of Mr. and Mrs. Long, was reared and educated by them. That he secured a leave from the army in order to attend the funeral of Mr. Long and while he was in her home, Mrs. Long gave him a small sack of money which she and her husband had kept as "John's money".   It amounted to slight-

ly less than $800. That he accepted the gift and deposited it in a bank as a joint account, with right of survivorship with his aunt, so that it would be there if his aunt needed it while he was in the army. She did not sign the signature card and there is no evidence that she even knew the deposit was made or in what manner. He wrote a letter after his return to army camp in which he referred to his aunt being ill and stated that she might be pretending illness. If so, it was a type of insanity.

However, she died in a short time and the appellee here was appointed administratrix of her estate. The attorney for Mrs. Barksdale wrote to her nephew saying that this money which he had deposited was needed for paying funeral expense, and sent a form of release to be executed by John Barksdale and returned to the bank, in order that the account could be drawn on. This, he sent to the bank by telegram. The money, amounting at that time to $775, was so used. Later a claim against the estate for this amount was presented, allowed and paid. The approval of this disbursement, by the settlement of the final account of administratrix, is the basis of this litigation.

Two propositions are presented: That no gift was made to John Barksdale, and that there is no competent evidence supporting such a finding. These will be discussed in that order.

The first proposition is subdivided into various items dealing with the lack of intent, competency, and title on the part of Mrs. Long to make the gift, and with the delivery to, and acceptance by, the donee. Appellant relies upon the cases of Hickman v. Barrett, 175 Okla. 262, 52 P. 2d 40; Munday v. Federal Nat. Bank, 195 Okla. 120, 155 P. 2d 526; Jonte v. English, 171 Okla. 291, 40 P. 2d 646, and Cravens v. Holliday et al., 198 Okla. 264, 177 P. 2d 495. These cases do not support appellant's position.

The Hickman Case enumerates the requirements of a valid gift inter vivos and all of them exist in the case at bar:

"1. Delivery and intent to give are absolute essentials to a valid gift inter vivos. . .

"3. In order to constitute a valid gift inter vivos the donor must part with dominion over the property. If he reserves the right to recall the property, there is no valid gift."

The decedent physically delivered the the money to the donee who, upon his own initiative, deposited it as a joint fund. This also complies with the rule in the Munday Case.

In the Jonte Case, supra, the additional requirement of competency of the donor is discussed. Therein this court followed the rule set out in 28 C.J. §13:

". . . If the donor has sufficient mental capacity to comprehend the transaction, if he understands the extent and value of his property, what persons are the object of his bounty, and the manner in which he is distributing his property among them, his gift will be valid."

The judgment of the trial court herein is supported by the Cravens Case, which discusses the essentials of such a gift, all of which are present in the case at bar. The record discloses that John Barksdale occupied practically the same position as a son, with his uncle and aunt, having lived with them for many years. They bore the expense of his education, including that at the university. His uncle had told him, to the exclusion of all others, of the serious physical condition which later caused his death. Upon his uncle's death he went immediately to his aunt. When the gift was made to him, what would have been more natural for a person to do, who felt such gratitude and responsibility as his every act evidenced, than to place the money where his aunt could reach it in case of necessity, or of his death with the army? He was willing that it be used for her funeral expenses, if need be. But in due course

of administration, he was entitled to be reimbursed from a solvent estate rather than be penalized for his benignant conduct.

This brings us to the question of the competency of the testimony and the witnesses. The proposition is subdivided into three parts: testimony of John Barksdale as to transactions had with decedent; competency of the wife of John Barksdale to testify, and competency of the attorney appearing for the administratrix to testify.

The first subdivision, above, is founded upon 12 O.S. 1941 §384, and appellant cites Munday v. Federal Nat. Bank and Hickman v. Barrett, supra. Neither of the cited cases presents a similar fact situation. The sole question here presented is whether or not a creditor, whose claim against the estate of a decedent has been allowed and paid, is a party to a hearing on a protest by an heir, to the allowance of such item by the approval of the administrator's final account. This precise question has not heretofore been before this court.

A very analogous situation was presented to the New York court in the case of In re Hanrette's Estate, 140 Misc. Rep. 832, 252 N.Y.S. 424, wherein it was held that when a claim had been presented and paid, the claimant does not have such interest in the result of a contested accounting by the administrator that he is within the inhibition of the statute. To the same effect are: In re Gorham, 177 N.C. 271, 98 S.E. 717, and In re Hepner, 123 Misc. Rep. 758, 206 N.Y.S. 217. The allowance or rejection of the final account of the administrator could have no effect upon a creditor who has been paid. Therefore, the situation wherein the statutory safeguard was intended to apply does not exist.

It is not necessary for us to determine the competency of the wife of John Barksdale, as a witness, because her entire testimony is no more than corroboration of other competent evidence, and if any error was committed by its admission, the same was harmless.

As to the testimony of the attorney for the administratrix, no proper objection was made in the trial court to bring the matter here for review. The objection to the testimony because it was incompetent, irrelevant and immaterial did not raise the question of competency of the witness. Nolan et al. v. Mathis, 134 Okla. 79, 272 P. 868, and cases therein cited.

The judgment of the trial court is, therefore, amply supported by the evidence.

Judgment affirmed.

HURST, C.J., and RILEY, WELCH, CORN, and LUTTRELL, JJ., concur.